PEOPLE *v* BURKE

1. INDICTMENT AND INFORMATION—RES GESTAE WITNESSES—PRODUC-
   TION—DUE DILIGENCE.

   The prosecutor's motion to excuse his nonproduction of three
   indorsed *res gestae* witnesses at defendant's trial for kidnap-
   ping was properly granted where the three witnesses were
   indorsed for the purpose of showing that defendant owned
   an automobile, a handgun, and some handcuffs similar to
   the ones used in the crime charged, defendant and the wit-
   nesses were servicemen stationed at Fort Custer, Michigan,
   prior to defendant's trial the base was closed and the wit-
   nesses were reassigned to military bases either outside of
   the state or the country, and local police were unable to
   serve issued subpoenas upon the witnesses.

2. CRIMINAL LAW—EVIDENCE—OTHER OFFENSES—MOTIVE—RES GES-
   TAE.

   Evidence of homosexual offenses which defendant, who was
   charged with only kidnapping, forced the complaining witness
   to commit after defendant had picked complainant up and
   held him against his will, was admissible to show defendant's
   reason, purpose, or motive for the kidnapping and as part
   of the *res. gestae* of the kidnapping (MCLA 768.27).

3. CRIMINAL LAW—NONTESTIFYING DEFENDANT—PHYSICAL COMPARI-
   SON.

   Refusal to allow defense counsel to make a physical comparison
   between the defendant and another witness was not error
   where the defendant was unwilling to take the stand.

REFERENCES FOR POINTS IN HEADNOTES

[1] 58 Am Jur, Witness § 3 *et seq.*
    21 Am Jur 2d, Criminal Law §§ 328, 345.
[2] 29 Am Jur 2d, Evidence § 325.
[3] 21 Am Jur 2d, Criminal Law § 361.
[4] 29 Am Jur 2d, Evidence § 266.
    1 Am Jur 2d, Abduction and Kidnapping § 30.
[5] 21 Am Jur 2d, Criminal Law § 525 *et seq.*
    Defendant's right to disclosure of presentence report.  40 ALR3d
    681.

4. CRIMINAL LAW — CIRCUMSTANTIAL EVIDENCE — INSTRUCTIONS TO JURY.

Refusal to instruct the jury on circumstantial evidence at defendant's. trial for kidnapping was not error where the complainant's testimony alone was sufficient to warrant a guilty verdict; any inferences derived from corroborating testimony were incidental and did not change the essential characteristics of the proofs of the crime.

5. CRIMINAL LAW — PRESENTENCE PROBATION REPORT.

Refusal to furnish a copy of the presentence probation report to defendant's counsel, as he demanded before sentencing, was not error where defendant did not give any information to the probation officer except requested facts concerning his background, defendant availed himself of the privilege of presenting character letters and his military service ratings which the trial court considered, defendant's attorney conferred with the trial judge concerning sentencing, defendant and his attorney were given an opportunity to make statements which they declined to do, presumably because they were satisfied with the written matter presented to the court and with their conferences with the judge, and the trial court did not consider anything derogatory to the defendant's past or present except the evidence regarding the crime charged, which would have justified a much harsher sentence than the one imposed upon defendant.

Appeal from Calhoun, Creighton R. Coleman, J. Submitted Division 3 September 7, 1971, at Grand Rapids. (Docket No. 11229.) Decided February 24, 1972.

Peter M. Burke was convicted of kidnapping. Defendant appeals. Affirmed.

*Frank J. Kelley*, Attorney General, *Robert A. Derengoski*, Solicitor General, *Stanley Everett*, Prosecuting Attorney, and *Noel G. Petersen*, Acting Chief Assistant Prosecuting Attorney, for the people.

*Rae & Rae*, for defendant.

Before: HOLBROOK, P. J., and McGREGOR and T. M. BURNS, JJ.

HOLBROOK, P. J.  Defendant appeals from conviction by jury verdict of kidnapping.  MCLA 750.349; MSA 28.581.  He was sentenced to a term of imprisonment from three to ten years.

On August 13, 1969, Millard Bundy III was hitchhiking from his girlfriend's house in Climax, Michigan.  His destination was Battle Creek.  Shortly after entering the third vehicle that stopped to give him a ride, he was forced at gunpoint to submit to handcuffs and was driven a short distance to a secluded area near the City of Battle Creek.  While there he was forced to perform certain homosexual acts with the driver of the automobile.  Subsequently, the victim was dropped off a short distance from his neighborhood in Battle Creek.

Defendant Peter M. Burke was arrested on August 27, 1969, for the crime of kidnapping.  Defendant alleges five assignments of error on this appeal, which we deal with in order.

## I.

Whether the court erred by excusing certain *res gestae* witnesses?

At the trial, the judge granted the prosecutor's motion to excuse three witnesses, who were indorsed on the information, from being called to testify in the case.

Defendant and the witnesses were servicemen stationed at Fort Custer, Michigan, at the time of the alleged crime.  Prior to trial the base was closed and the proposed witnesses were reassigned.  One witness went to Korea, the others to Maine and Colorado.  The missing witnesses were stated to

have been indorsed for the purpose of showing that defendant owned an automobile, a handgun, and some handcuffs similar to the ones used in the crime.

Subpoenas had been issued and turned over to the local police who attempted to serve them. Evidence indicated and the court observed that these witnesses were unavailable and not in the state.

The case of *People* v *Tiner*, 17 Mich App 18 (1969), sets forth the rule that the prosecutor's duty to secure the presence of an indorsed *res gestae* witness for a criminal trial can be excused if a showing of diligence is made in an effort to produce such witness, and the determination of diligence is within the discretion of the trial court.

The trial court was satisfied that a sufficient showing of diligence had been demonstrated to properly excuse the prosecutor from producing the indorsed witnesses.

From the record here we find no abuse of discretion. See also, *People* v *Melvin Jackson*, 21 Mich App 129 (1970).

## II.

Whether the trial court erred by permitting the prosecution to introduce evidence of another crime for which the defendant was not charged?

The information charged defendant with the crime of kidnapping only. At the trial evidence of homosexual offenses that allegedly took place after the complaining witness was picked up, was admitted. The court ruled that such evidence was permissible to show a reason or purpose for the alleged crime of kidnapping and further that it was part of the *res gestae* of the offense. MCLA 768.27; MSA 28.1050 provides as follows:

"In any criminal case where the defendant's motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing an act, is material, any like acts or other acts of the defendant which may tend to show his motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing the act, in question, may be proved, whether they are contemporaneous with or prior or subsequent thereto; notwithstanding that such proof may show or tend to show the commission of another or prior or subsequent crime by the defendant."

We conclude that the testimony given was permissible to show the reason, purpose, or motive for the commission of the crime. *People* v *Nawrocki*, 6 Mich App 46 (1967). We rule it was also permissible evidence because it constituted a part of the *res gestae,* pertaining to the crime charged.

"It is elementary that the acts, conduct and demeanor of a person charged with crime at the time of, or shortly before or after the offense is claimed to have been committed, may be shown as a part of the *res gestae.* Proof of such acts is not rendered inadmissible by the fact that they may tend to show the commission of another crime. 16 CJ, pp 574, 575." *People* v *Savage,* 225 Mich 84, 86 (1923).

### III.

Whether the trial court erred in refusing to allow a physical comparison to be made of the defendant's height and weight with that of another witness?

At one point during the trial, defense counsel attempted to illustrate to the jury a major discrepancy in the complaining witness's story by showing the jury at close-up range the height and weight of the defendant by having the defendant stand next to a witness, who testified as to his own height and

weight. The judge refused to allow the comparison. Defendant contends this is vital physical evidence which should have been allowed. The prosecution asserts that defendant Burke could not properly offer an exhibit of his person to the jury unless he was willing to submit to cross-examination about possible changes in his appearance since the time of the alleged offense. Defendant would not do this because he was unwilling to take the witness stand. The prosecution further contends that the comparison had been made unnecessary by the fact that the victim had admitted giving inconsistent statements to the police concerning the size of the kidnapper, because he did not want the kidnapper to be apprehended.

Defendant was present in the courtroom and we assume that he stood up during the course of the trial either coming or going. The case of *People v Budd,* 279 Mich 110 (1937), resolves the issue before us. In that case an offering was made of the defendant's head size by allowing him to try on a hat that was found at the scene of a robbery. There, as here, the defendant also refrained from taking the stand. The Court held that the defendant did not have a right to try on the hat in front of the jury without becoming a witness for himself. We find no error here.

## IV.

Whether the trial court erred by refusing to instruct the jury on circumstantial evidence?

The testimony here of the kidnapping victim alone was sufficient to warrant a verdict of guilty. The most probative evidence was the testimony of his personal experiences during the crime. This testimony was direct evidence, and not circumstantial evidence. Any inferences derived from the corro-

borating testimony were incidental and did not change the essential characteristics of the proofs of the crime. Therefore, there was no reason for the trial judge to instruct the jury on circumstantial evidence.

## V.

Whether the court erred by refusing to furnish a copy of the presentence probation report to counsel for defendant, when the report had been demanded prior to sentencing?

The defendant contends that he should have had an opportunity to rebut any adverse material appearing in the presentence report, and he avers his attorney could not function effectively absent the knowledge and contents of the report.

To properly evaluate this issue we relate the facts leading up to the date of sentencing. Defendant was found guilty after a jury trial of the offense of kidnapping on May 6, 1970. On June 4, 1970, defendant filed a motion for admission to bail pending appeal. This was opposed by the prosecuting attorney. The court granted said motion.

On June 4, 1970, defense attorney filed a motion for new trial. The motion was answered by the prosecutor on June 12, 1970. A substantial delay was caused waiting for the transcript of the trial to be prepared. On December 24, 1970, the court filed a finding as to said motion and an order denying defendant's motion for new trial was filed on January 11, 1971. Some time thereafter the date of February 8, 1971, was set for sentencing in this matter for the convenience of the defendant. On January 25, 1971, defense attorney filed a demand with the Calhoun County Probation Department that defense attorney be furnished with a copy of the

presentence probation report no later than Wednesday, January 27, 1971. On January 28, 1971, defense attorney filed a motion in the court that defense counsel be furnished with a copy of said report. This motion was orally argued February 1, 1971.

The oral argument was not taken down by the reporter, however the attorneys have stipulated to what took place at the time. The pertinent part is as follows:

"The only dialogue that took place between the trial court and either of the attorneys was at a point near the end of the argument when the trial court judge queried the attorney for the appellant along the lines that he had understood that the defendant-appellant had refused to cooperate with the probation department on advice of counsel in connection with the preparation of said report; whereupon counsel for the appellant denied that he had counseled the defendant-appellant not to cooperate with the said probation department and made the comment that, on the contrary, he had advised the defendant-appellant to fully cooperate with the probation department, and that said attorney further stated that it appeared to him from conferring with this client after the said defendant-appellant had talked to the probation department, that outside of a few perfunctory questions concerning background, to which the defendant-appellant fully and completely responded, that the probation department was not interested in doing anything other than acting as a supra-police agency as to any possible facts that might have led to the criminal charge being brought against said defendant-appellant and that the defendant-appellant, consistent with his not testifying on his own behalf at trial, did refuse to talk about the latter."

The defendant did not give any information to the probation officer except facts concerning his background. The other matter, *i.e.*, that the judge was of

the opinion that the defendant did not cooperate with the probation officer was fully answered by the defendant's attorney.

We deem it important to show what transpired at the sentencing of the defendant by the trial court on February 8, 1971, which is as follows:

"*The Court:* Your name is Peter Michael Burke, right?

"*The Defendant:* Yes.

"*The Court:* You stand here with your attorney, Mr. Rae, right?

"*The Defendant:* Yes.

"*The Court:* You were convicted of the crime of kidnapping May 6, 1970, by jury trial, is that right?

"*The Defendant:* I believe so, yes.

"*The Court:* The record may show I have had conferences with your attorney, he has presented me with character letters with ratings in the military service. I have reviewed your family history and your family status at the present time. Now do you wish to say anything before I pronounce sentence?

"*The Defendant:* No.

"*The Court:* Now Mr. Burke, it appears that your record is clean as far as any offenses in the past are concerned. This is a very—I don't know what word to use—a very important crime, and of course it carries up to life sentence, you understand that?

"*The Defendant:* Yes, I do

"*The Court:* I have no desire to sentence you with any such period of time, I assure you. All right, I am going to sentence you as follows, Mr. Burke: I hereby sentence you to the Corrections Commission of the State of Michigan for not more than ten years and not less than three years."

It appears that defendant availed himself of the privilege of presenting character letters and ratings of his military service which were considered by the trial court. The defendant's attorney also had con-

ferences with the trial judge concerning sentencing. There is nothing in the record which would indicate that the trial court considered anything derogatory to the defendant's past or present except the evidence in the case, which we point out would have justified a much harsher sentence than that which was meted out to the defendant.

The defendant and his counsel were given ample opportunity to make statements which they declined to make presumably because they were satisfied with the written matter presented to the court and the conferences that took place between the defendant's attorney and the court. *People* v *Malkowski*, 385 Mich 244 (1971).

There being no showing of any prejudice to defendant, we rule that it was not reversible error for the trial court to have refused to give to the defendant a copy of the probation report before sentencing.

Affirmed.

All concurred.